1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7
8              EASTERN DISTRICT OF CALIFORNIA
9
10
11  MARVIN BERRIOS,                    CASE NO.    1:11-cv-1435-LJO-MJS (PC)

12                                     ORDER   DISMISSING   PLAINTIFFS'S
                    Plaintiff,         COMPLAINT WITH LEAVE TO AMEND
13
                                       (ECF No. 1)
14      v.
                                       AMENDED   COMPLAINT   DUE   WITHIN
15  DR. J. BONDOC, et al.,             THIRTY DAYS
16
                    Defendants.
17  _____/
18
19      Plaintiff Marvin Berrios ("Plaintiff") is a state prisoner proceeding pro se and in forma
20  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

21      Plaintiff initiated this action on August 26, 2011.  (Compl., ECF No. 1.)  No other
22  parties have appeared in this action.  Plaintiff's Complaint is now before the Court for
    screening.
23
24      For the reasons set forth below, the Court finds that Plaintiff's Complaint fails to
    state a claim.  Plaintiff will be given leave to amend.
25
    I.   **SCREENING REQUIREMENT**
26
27      The Court is required to screen complaints brought by prisoners seeking relief
28  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

                                   -1-

1 § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has

2 raised claims that are legally "frivolous or malicious," that fail to state a claim upon which

3 relief may be granted, or that seek monetary relief from a defendant who is immune from

4 such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion

5 thereof, that may have been paid, the court shall dismiss the case at any time if the court

6 determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

7 granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

8        A complaint must contain "a short and plain statement of the claim showing that the

9 pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are

10 not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

11 mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.

12 Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

13 Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

14 plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

15 Facial plausibility demands more than the mere possibility that a defendant committed

16 misconduct and, while factual allegations are accepted as true, legal conclusions are not.

17 Id. at 1949-50.

18 **II.    SUMMARY OF PLAINTIFF'S COMPLAINT**

19        Plaintiff is currently housed at Kern Valley State Prison.  He previously was housed

20 at California State Prison, Corcoran ("CSP") where most of the events at issue in his

21 Complaint occurred.  Plaintiff sues the following individuals for unlawful retaliation under

22 the First Amendment and inadequate medical care under the Eighth Amendment: 1) Dr.

23 J. Bondoc, Plaintiff's primary care physician at CSP, 2) Dr. Edgar Clark, acting Chief

24 Medical Officer at CSP, 3) Dr. Teresa Macias, Chief Medical Officer, and 4) John Doe.

25        Plaintiff asks for a declaratory judgement, for a temporary restraining order and

26 preliminary injunction, that he be appointed counsel, for monetary damages, and for

27 litigation costs.

28        Plaintiff alleges as follows:

1    Plaintiff is paralyzed from the waist down as a result of a gun shot wound he received
2    in 1994. (Compl. at 4.) Due to the injury, he suffers from a neurological pain disorder. (Id.)
3    Plaintiff was supposed to have a morphine pain pump implanted during surgery in 2007, but
4    was told after the surgery that a "nerve stimulator/nerve regenerator" had been implanted.
5    (Id. at 5.)

6    After surgery, Plaintiff started to experience pain.  (Compl. at 5.)   He filed
7    approximately forty-two health care service request forms attributing the pain to the nerve
8    stimulator, complaining that the nerve stimulator was malfunctioning, and asking that the
9    nerve stimulator be removed. (Compl. at 5.)  Defendant Bondoc was his primary care
10   physician during this time period. (Id.)  Several times Plaintiff's pain was so severe that he
11   was thrown out of his wheelchair and ended up crying on the floor. (Id. at 6.)  Defendant
12   Bondoc saw some of these incidents. (Id.)  During every visit Defendant Bondoc said there
13   was nothing wrong with Plaintiff. (Id.)

14   Plaintiff began complaining about the implant pain on January 13, 2008, but was not
15   x-rayed until 90 days later.  (Compl. at 7.)  The technician who took the x-rays mis-
16   diagnosed the cause of Plaintiff's pain as constipation. (Id.)  Plaintiff did not make regular
17   bowel movements, but according to Plaintiff the pain was due to the implant. (Id.)  The
18   technician negligently failed to check for an implanted device as directed.  (Id.)

19   Plaintiff was given another x-ray on June 18, 2008, but, according to Dr. Pineda, the
20   results were unclear. (Compl. at 7.)  Dr. Pineda reviewed the records, and found that there
21   might be something near the inguinal area. (Id.)  An August 28, 2008, the wrong area of
22   his body was x-rayed. (Id. at 8.)

23   Plaintiff filed a "citizens complaint" and twelve appeals against Defendant
24   Bondoc. (Comp. at 8.) All were denied. (Id.)  The appeals coordinator at CSP abused his
25   authority by preventing Plaintiff from proceeding on his appeals. (Id. at 8-9.)

26   On approximately February 20, 2009, Plaintiff was transferred to High Desert State
27   Prison. (Compl. at 9.)  Plaintiff filed a grievance there and told his nerve stimulator would
28   be removed. (Id.)  Plaintiff was transferred back to CSP on July 14, 2009, before he could

1  receive the surgery.  (Id.)

2  Plaintiff continued to suffer at CSP; he lost weight, started taking psychotropic
3  medicine for his depression, and felt suicidal.  (Compl. at 10.)

4  On September 24, 2009, Defendant Bondoc retaliated against Plaintiff for filing
5  appeals and complaints against him by telling him to stop crying and advising Plaintiff  he
6  would not get "another thing " from Dr. Bondoc. (Compl. at 10.)

7  On January 7, 2010, Plaintiff had severe muscle spasms in both legs, he fell out of
8  his wheelchair and heard a loud popping noise.  (Compl. at 11.)  Plaintiff was seen by a
9  nurse who sent him back to his cell without an x-ray of what he thought might have been
10  a broken leg.  (Id.)  Plaintiff's right thigh began to swell.  (Id.)  On July 8, 2010, another
11  nurse noted the swelling and made a referral for an x-ray.  (Id.)   On July 23, 2010,
12  Defendant Bondoc made another referral for an x-ray.  (Id.)  On July 24, 2010, Plaintiff filed
13  another appeal against Defendant Bondoc for not providing proper treatment.  (Id.)  Plaintiff
14  does not "recall ever getting a x-ray for at least a couple of months."  (Id.)  Plaintiff was in
15  pain for a long time.  (Compl. at 12.) On October 9, 2010, Defendant Bondoc failed to
16  investigate the broken leg and instead merely ordered an ace bandage for Plaintiff's thigh
17  and made a note for a follow-up visit for a fractured thigh.  (Id.)

18  Plaintiff received an x-ray on October 14, 2010, but his thigh was not x-rayed.
19  (Compl. at 12.)  Plaintiff received an x-ray on the correct area on October 16, 2010.  (Id.)
20  Plaintiff believes that the doctors did not treat his leg for 90 days in the hope it would heal
21  itself and in retaliation for Plaintiff's many complaints.  (Id.)  Plaintiff's most recent radiology
22  report notes that there is something growing on the bone, near the injury, and that it
23  "occurred after trauma."  (Id.)  Plaintiff believes that this is not a tumor, and might actually
24  be a bone fragment.  (Id.)

25  **III.**   **ANALYSIS**

26  Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges,
27  or immunities secured by the Constitution and laws' of the United States."  Wilder v. Virginia
28  Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not

1 itself a source of substantive rights, but merely provides a method for vindicating federal
2 rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865
3 (1989).

4      To state a claim under section 1983, a plaintiff must allege two essential elements:
5 (1) that a right secured by the Constitution or laws of the United States was violated, and
6 (2) that the alleged violation was committed by a person acting under the color of state law.
7 See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243,
8 1245 (9th Cir.1987).

9      **B.**    **Linkage Requirement**

10      As an initial issue, Plaintiff has not stated any claim against Defendants Macias,
11 Clark, or Doe because he has not linked them to any direct violation of his rights.  It appears
12 he names them only  because of their supervisory position over other defendants.

13      Under section 1983, Plaintiff must demonstrate that each named Defendant
14 personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934
15 (9th Cir. 2002).  The Supreme Court has emphasized that the term "supervisory liability,"
16 loosely and commonly used by both courts and litigants alike, is a misnomer.  Iqbal, 129 S.
17 Ct. at 1949.  "Government officials may not be held liable for the unconstitutional conduct
18 of their subordinates under a theory of respondeat superior."  Id. at 1948.  Rather, each
19 government official, regardless of his or her title, is only liable for his or her own misconduct,
20 and therefore, Plaintiff must demonstrate that each defendant, through his or her own
21 individual actions, violated Plaintiff's constitutional rights.  Id. at 1948–49.

22      Plaintiff has not alleged facts demonstrating that Defendants Macias, Clark, or Doe
23 personally acted to violate his rights.  Plaintiff shall be given the opportunity to file an
24 amended complaint curing the deficiencies.  In his amended complaint, Plaintiff needs to
25 specifically link each of these Defendants to a violation of his rights.

26      **C.**    **Eighth Amendment - Medical Care**

27      "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an
28 inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439

F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285 (1976)).  The two part test for deliberate indifference requires Plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Plaintiff's has alleged two separate medical conditions: 1) pain that resulted from the nerve stimulator implant and 2) an insufficiently treated thigh injury.  Both suggest serious medical conditions, namely severe pain from 2007 on and, later, a broken thigh bone. Failure to treat such conditions could result in further and significant injury.

Although Plaintiff has pled a serious medical condition, he has failed to allege sufficient facts to enable the Court to conclude Defendant Bondoc was deliberately indifferent to Plaintiff's medical needs.  To show deliberate indifference, Plaintiff must show "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  Id. (citing McGuckin, 974 F.2d at 1060).  "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff alleges  two separate incidents in which he claims Defendant Bondoc acted with deliberate indifference to his medical needs.  He alleges that x-rays ordered by Dr. Bondoc because of pain from the nerve stimulator and then from the fractured thigh bone.

-6-

1 were either negligently taken or negligently read.  Plaintiff is dissatisfied with the treatment
2 provided and the conclusions drawn.

3      "[A] difference of opinion between a prisoner-patient and prison medical authorities
4 regarding treatment does not give rise to a § 1983 claim.'"  Turner v. Greenman, 2011 WL
5 1343120, *3 (E.D. Cal. Apr. 7, 2011) (quoting Franklin v. Oregon, 662 F.2d 1337, 1344 (9th
6 Cir. 1981).  Similarly, Plaintiff has no right to a guarantee of success resulting from his
7 medical treatment.  See, e.g., Stephenson v. Kaiser Found. Hospitals, 203 Cal.App.2d 631,
8 636, 21 Cal.Rptr. 646 (1962) ("[A] doctor is not a warrantor of cures or required to guarantee
9 results.") To show deliberate indifference, he must describe some purposeful act or failure
10 to respond to a medical need. Thus, the failure of Defendant Bondoc to provide the desired
11 relief in the manner Plaintiff wished does not create a deliberate indifference claim.  For the
12 same reasons, even professional negligence  by the medical practitioner, i.e., medical
13 malpractice, does not give rise to an Eighth Amendment claim.

14      Accordingly, Plaintiff has failed to state a claim for inadequate medical care under
15 the Eighth Amendment for either incident.  Plaintiff will be given leave to amend this claim.

16 **C.   Retaliation**

17      Plaintiff alleges that Defendant Bondoc retaliated against him for pursuing his
18 constitutional rights.

19      "Within the prison context, a viable claim of First Amendment retaliation entails five
20 basic elements: (1) An assertion that a state actor took some adverse action against an
21 inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled
22 the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably
23 advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th
24 Cir. 2005).

25      Plaintiff has not described any action taken against him that could be considered
26 "adverse".  Although Defendant Bondoc allegedly made a statement to Plaintiff suggesting
27 dissatisfaction with Plaintiff's  grievances, it appears that Defendant Bondoc continued to

28

1  treat Plaintiff throughout his time at CSP.  Plaintiff has failed to satisfy this prerequisite and
2  show an adverse action was taken against him.

3      The second element of a prisoner retaliation claim focuses on causation and motive.
4  See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his
5  protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct."
6  Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).
7  Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may
8  rely on circumstantial evidence.  Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding
9  that a prisoner established a triable issue of fact regarding prison officials' retaliatory
10 motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez,
11 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)
12 ("timing can properly be considered as circumstantial evidence of retaliatory intent").
13 Circumstances suggest that Defendant took actions in response to Plaintiff's pursuit of
14 protected conduct.  Such circumstances could conceivably be sufficient to satisfy this
15 second prerequisite of a retaliation claim **if** they were shown to be adverse.

16     Filing a grievance is protected action under the First Amendment.  Valandingham v.
17 Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).  Pursuing a civil rights legal action is also
18 protected under the First Amendment.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).
19 Plaintiff has alleged that he was engaged in conduct that was protected under the First
20 Amendment.   He filed several grievances regarding his medical care at CSP.   This
21 constitutes protected conduct under the First Amendment for retaliation purposes.  Plaintiff's
22 facts satisfy this third prong.

23     With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape
24 liability for a First Amendment violation merely because an unusually determined plaintiff
25 persists in his protected activity...."  Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d
26 1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts
27 would chill or silence a person of ordinary firmness from future First Amendment activities.
28 Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).  Although

1   Plaintiff alleges the conclusion that he was "chilled", the alleged retaliatory action was so
2   innocuous it could not be said to chill a person of ordinary firmness from exercising First
3   Amendment activities.  It does not satisfy the fourth prerequisite.

4        With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison
5   authorities' retaliatory action did not advance legitimate goals of the correctional institution
6   or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532.  It is
7   doubtful that Defendant Bondoc's threat to deny medical care had any legitimate
8   penological motivation, but as noted above, there is no basis upon which to find that such
9   threat was in fact carried out.

10       Because Plaintiff has failed to allege sufficient facts to satisfy all five prongs of his
11  retaliation claim, the Court finds that he has failed to state a claim upon which relief could
12  be granted.  Plaintiff will be given leave to amend this claim if he believes he can do so and
13  assert a non-frivolous claim for retaliation based upon something more than what is
14  described in his Complaint.  If he chooses to do so, he must show how all five prerequisites
15  to a retaliation claim can be met based upon such negligible activity by prison officials.

16  **IV.    CONCLUSION AND ORDER**

17       Plaintiff's Complaint fails to state a claim upon which relief may be granted under §
18  1983.  The Court will provide Plaintiff with the opportunity to amend to cure the deficiencies
19  in his claim.  Lopez, 203 F.3d at 1130; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir.
20  1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in
21  his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"
22  complaints).

23       Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state
24  what each named defendant did that led to the deprivation of Plaintiff's constitutional rights,
25  Iqbal, S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be
26  [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at
27  555 (citations omitted).

28

Finally, an amended complaint supercedes the prior complaint, <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.  Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Accordingly, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a complaint form;

2.   Plaintiff's Complaint, filed August 26, 2011, is dismissed for failure to state a claim upon which relief may be granted under § 1983;

3.   Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4.   If Plaintiff fails to file an amended complaint in compliance with this Order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   May 11, 2012          /s/ *Michael J. Seng*
                               UNITED STATES MAGISTRATE JUDGE

-10-